UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE BARANEK,<br><br>             Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>             Defendant. | Case No. CV 14-8554 (SS)<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Michelle Baranek ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.

\\

\\

For the reasons stated below, the decision of the Commissioner is REMANDED for further proceedings.

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance ("DIB") on October 25, 2010. (Administrative Record ("AR") 65). Plaintiff alleged disability beginning on March 14, 2008, due to severe chronic pelvic and abdominal pain, severe endometriosis, severe endosalpingiosis, instertitial cystitis, liver hemangiomas, non-alcoholic fatty liver disease, arthritis/arthrosis and torn cartilage in the right knee and hiatal hernia.  (AR 65-66).  Plaintiff's application was initially denied on June 9, 2011 and denied on reconsideration on November 10, 2011.  (AR 96-99, 101-05).  On November 17, 2011, Plaintiff requested a hearing before an administrative law judge. (AR 107-08).  A hearing was held before Administrative Law Judge ("ALJ") Mary L. Everstine on November 27, 2012 ("the ALJ Hearing"), at which Plaintiff was represented by counsel.  (AR 37, 39).  Plaintiff testified at the hearing, as did her husband Zachariah Baranek and Vocational Expert ("VE") David Van Winkle. (AR 37-64).  The ALJ issued an unfavorable decision on December 17, 2012, finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 14-25).  Plaintiff requested review of the ALJ's decision on January 7, 2013, which the Appeals Council denied on September 15, 2014.  (AR 1-10).  As

a result, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action on May 6, 2015.

## III.

### THE FIVE STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

    (3) Does the claimant's impairment meet or equal one on the list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

    (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

    (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

    The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do

4

so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 14). At step one, the ALJ found that Plaintiff had not been engaged in substantial gainful employment since her alleged disability onset date of March 14, 2008. (AR 16).

At step two, the ALJ found that Plaintiff had the severe impairments of history of endometriosis with multiple surgeries for lysis of adhesions, nonalcoholic fatty liver disease, hemangiomas of the liver, obesity, depression and anxiety. Id. Plaintiff also alleged right knee arthritis and torn cartilage, hiatal hernia, a cystocele, endosalpingiosis and interstitial cystitis. (AR 16-17). However, objective medical evidence did not show that these impairments more than minimally affected

Plaintiff's ability to perform work activities, and the ALJ consequently found they were not severe impairments. (Id.). The ALJ also found that endosalpingiosis and interstitial cystitis were not medically determinable impairments because there were no objective findings in the record confirming the diagnoses, and an individual's own statements regarding her symptoms were insufficient to establish the existence of an impairment. (AR 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Id.). The ALJ specially considered listing 5.05[1] in making this determination. (Id.). Though there is no longer a listing for obesity, the ALJ also considered Plaintiff's obesity in her assessment of Plaintiff's impairments and their relationships to the listings' requirements. (Id.). The ALJ also found that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06.[2] (Id.). The ALJ found that Plaintiff's mental impairments did not cause at least two "marked' limitation or one "marked" limitation and "repeated" episodes of extended decompensation, and therefore the "paragraph

---

[1] Listing 5.05 covers chronic liver disease. 20 C.F.R. Part 404, Subpart P, Appendix 1.
[2] Listing 12.04 covers affective disorders and listing 12.06 covers anxiety-related disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1.

6

B" criteria were not satisfied. (AR 17-18). The ALJ also determined that the evidence did not establish the presence of "paragraph C" criteria. (AR 18). The ALJ then found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except she was limited to unskilled work. (AR 19). In reaching this decision, the ALJ specified that she had considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 96-7p. (Id.). The ALJ also stated that she considered opinion evidence in her finding, in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (Id.).

In assessing Plaintiff's credibility, the ALJ followed a two-step process in which she first determined whether there was an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the Plaintiff's pain or other symptoms. (Id.). Next, after the underlying impairment(s) had been shown, she evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms to determine the extent to which they limited Plaintiff's functioning. (Id.). Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 21). However, the ALJ also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms

7

were not credible to the extent that they were incompatible with Plaintiff's RFC. (Id.).

The ALJ reviewed Plaintiff's subjective complaints and found inconsistencies that diminished her overall credibility and suggested that her pain is not as severe or limiting as she claims. (Id.). Although Plaintiff alleges that her abdominal pain is so severe that she spends most of the day in bed and cannot perform routine daily activities, the ALJ found that objective medical evidence does not support her statement. (Id.). Despite Plaintiff's complaints of severe abdominal pain, imaging tests of Plaintiff's abdomen were largely normal, and physical examinations revealed only mild to moderate tenderness and often no abnormalities at all. (Id.). Treatment notes also state that she "looks well" and is in no distress. (Id.). The ALJ also noted that, although Plaintiff told the Agency that she spent most of her day in bed and only got up to use the bathroom, she has made conflicting statements to doctors that she could ride a bike, walk, climb stairs and perform a home exercise program. (Id.). The ALJ also opined that, despite having visited a number of specialists, Plaintiff has only received conservative medical treatment. (Id.). Additionally, Plaintiff's treatment has primarily consisted of oral pain medications, and there is some evidence that Plaintiff's dependence on narcotics affected her functioning. (Id.). However, the ALJ did opine that Plaintiff "does experience some abdominal pain associated with her history of endometriosis and

her liver impairments...this pain is not as severe or as limiting as she claims." (Id.).

The ALJ also questioned statements from Plaintiff's husband at the hearing regarding her limitations. (Id.). Plaintiff's husband testified that Plaintiff's pain would prevent her from working for "even an hour per day." (Id.). Although his statements were consistent with Plaintiff's, the ALJ found them unpersuasive because they were unsupported by objective medical evidence. (Id.). The ALJ opined that the evidence as a whole suggested that Plaintiff's pain was not as severe or limiting as she claimed. (Id.).

The ALJ also reviewed the specific findings of Plaintiff's physicians and questioned objective medical evidence. (Id. at 22). The ALJ gave great weight to the opinion of state agency examining physician Taylor, who opined that Plaintiff could stand and walk for no more than six hours in an eight hour day, but could sit without limitation. (Id.). Dr. Taylor also opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and could crawl and kneel only occasionally. (Id.). State agency reviewing physicians Betcher and Dodson imposed additional environmental restrictions on Plaintiff, indicating that she must avoid vibration and extreme cold. (Id.). However, there is no evidence in the record that Plaintiff's conditions are exacerbated by vibration or extreme cold, and the ALJ accordingly granted the opinions some weight. (Id.). The ALJ also gave just some weight to the opinion of

hepatic specialist and examining physician Ahmed because he restricted Plaintiff from contact sports and heavy activity but did not fully explain what activities Plaintiff may do despite her impairments. (Id.). The ALJ ultimately assessed limitations consistent with the medical evidence and Dr. Taylor's recommendations. (Id. at 24).

The ALJ also gave the opinion of Plaintiff's treating physician, Deanna Price, little weight. (Id. at 22-23). Although Dr. Price had seen Plaintiff on many occasions, the ALJ opined that her opinions were inconsistent with the medical evidence and her own examination reports. (Id. at 23). The ALJ described the medical evidence showing that Plaintiff has a greater capacity for sitting, standing, walking, lifting, carrying and other postural tasks than Dr. Price noted. (Id.). The ALJ also noted that, despite Dr. Price's restrictions on Plaintiff, she did not describe any significant abnormalities in Plaintiff's presentation and often opined that she "look[ed] well." (Id.). Dr. Price also opined that Plaintiff's symptoms were so severe that they would interfere with the attention and concentration needed to complete work tasks, however no doctor had otherwise noted that Plaintiff had difficulties with attention and concentration that would prevent her from completing simple work tasks. (Id.). The ALJ also found that there was no objective evidence that Plaintiff struggled to manage stress or adhere to a schedule. (Id.).

\\
\\

The ALJ reviewed the findings of examining psychologist Mair and state agency reviewing psychiatrist Walls. (Id.). Dr. Mair found that Plaintiff could perform work tasks without difficulties, but her ability to complete a normal workweek was moderately impaired. (Id.). However, the ALJ found that objective evidence does not suggest that Plaintiff's depression and anxiety inhibit her ability to complete a normal workweek. (Id.). Despite this incongruence, the ALJ gave Dr. Mair's opinion some weight because other portions of it were well-supported by the evidence. (Id.). Dr. Walls noted that Plaintiff had a "more than moderate" limitation in persistence, but could complete a normal workday and week when taking medications. (Id.). The ALJ opined that Dr. Walls's opinion reiterated much of Dr. Mair's opinion, and gave the opinion some weight. (Id.).

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as an accountant, a bookkeeper and an office manager. (Id. at 24). The ALJ found that all of these jobs exceeded Plaintiff's RFC because they were performed at the skilled level, and Plaintiff was restricted to unskilled work. (Id.).

At step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, she could perform jobs that exist in significant numbers in the national economy. (Id.). The ALJ considered Plaintiff's age, education, work experience and RFC in conjunction with the Medical-Vocational

11

Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, ("the grids) to arrive at this finding. (Id.). The ALJ found that Plaintiff was "not disabled" under the grids because she is able to substantially perform the full range of light work, despite her non-exertional limitation to unskilled work. (Id. at 24-25). Because the limitation to unskilled work is only a "slight erosion" in her ability to perform light work, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at 25).

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F. 3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial

12

evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.

## DISCUSSION

Plaintiff contends that the ALJ improperly rejected the opinion of Plaintiff's treating physician, that the ALJ's finding on Plaintiff's RFC is incomplete and not supported by substantial evidence and that the ALJ improperly rejected the testimony of both Plaintiff and her husband. (Memorandum in Support of Complaint ("MSC"), Dkt. No. 14, at 2-3). Plaintiff also contends that the ALJ erred in failing to obtain evidence from a vocational expert at step five of the evaluation process because Plaintiff has significantly severe non-exertional impairments. (Id.). The Court agrees that the ALJ improperly relied on the grids in determining Plaintiff's disability status. Therefore, the ALJ's decision should be reversed and this action remanded for further proceedings.

**The ALJ Improperly Relied On The Grids In Determining Plaintiff's Disability Status**

At step five of the sequential evaluation process, the burden shifts to the Commissioner to show that "the claimant can perform a significant number of other jobs in the national economy," taking into consideration claimant's RFC, age, education and work experience. Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (quoting Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002)). The Commissioner can show that there are a significant number of other jobs in the national economy that the claimant can perform by taking the testimony of a vocational expert, or by using the grids. Tackett, 180 F.3d at 1101 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577-78 (Pregerson, J., concurring) (9th Cir. 1988)). The grids "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." Hoopai, 499 F.3d at 1075 (alteration in original) (quoting Heckler v. Campbell, 461 U.S. 458, 461-62 (1983)).

Where a claimant's qualifications correspond to the job requirements indicated by the grids, the grids "direct a conclusion as to whether work exists that the claimant could perform." Id. (quoting Heckler, 461 U.S. at 462). If the grids completely and accurately represent the claimant's limitations

14

and the claimant is able to perform the full range of jobs in a given category, the ALJ may rely solely on the grids to show the availability of jobs for the claimant. Tackett, 180 F.3d at 1101-02. When the grids do not match the claimant's qualifications, the ALJ can use the grids as a framework to determine what work exists that the claimant can perform, or the ALJ can rely on testimony from a vocational expert. Hoopai, 499 F.3d at 1075. Although an ALJ can use the grids without vocational expert testimony when a claimant alleges a non-exertional limitation, "the grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Id. (internal quotations and alterations omitted). If a non-exertional limitation is sufficiently severe so as to limit the range of work permitted by the claimant's exertional limitations, a vocational expert's testimony is required. Id. at 1076. Examples of non-exertional limitations are pain, postural limitations, or environmental limitations. Tackett, 180 F.3d at 1102.

Here, Plaintiff's non-exertional impairments are sufficiently severe so as to limit her capacities in ways not contemplated by the grids, and the grids are therefore inapplicable. The ALJ found that Plaintiff had the RFC to perform light work, except she was limited to unskilled work. (AR 19). Plaintiff alleges that she suffers severe abdominal pain that prevents her from performing even routine daily activities. (AR 173-75). Although the ALJ opined that "this

pain is not as severe or as limiting as she claims," the ALJ also noted that "the claimant does experience some abdominal pain associated with her history of endometriosis and her liver impairments." (AR 21). Because the grids do not completely and accurately represent Plaintiff's limitations, and because her pain is sufficiently severe so to as limit Plaintiff beyond her exertional limitations, the testimony of a vocational expert is necessary to determine Plaintiff's ultimate disability status. Tackett at 1101-02; see also Penny, 2 F.3d at 958 ("As a consequence of the ALJ's error in discrediting Penny's complaints of pain, the Secretary erroneously relied on the medical vocational grids to determine that there were jobs in the national economy that Penny is capable of performing.").

Plaintiff was also diagnosed with depression and anxiety, which limited her to unskilled work. (AR 20). Because Plaintiff was limited to unskilled work, she was unable to perform the full range of jobs classified as "light work." (AR 25). Therefore, jobs existed in the national economy that she could perform. See Tackett, 180 F.3d at 1101-02. Although mild or moderate depression is generally not a sufficiently severe non-exertional limitation that significantly limits a claimant from doing work beyond the exertional limitation, the ALJ found that Plaintiff's depression and anxiety did prevent her from doing the full range of light work. Hoopai, 499 F.3d at 1077. The ALJ found that Plaintiff was only able to perform unskilled light work as a result of her depression and anxiety. (AR 20). As such, the

ALJ improperly relied on the grids without the assistance of a vocational expert.

Because the grids do not accurately and completely represent Plaintiff's limitations, the ALJ improperly relied on them in determining that Plaintiff was "not disabled" at step-five of the sequential evaluation process. Plaintiff also suffers from sufficiently severe non-exertional limitations, including pain, depression and anxiety to make the grids inapplicable to the present case. Therefore, the ALJ must hear testimony from a vocational expert to determine whether Plaintiff was disabled under the Social Security Act.

## VIII.
## CONCLUSION

Consistent with the foregoing, it is ORDERED that the Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. The Clerk of the Court shall serve copies of this order and the Judgment on counsel for both parties.

DATED: October 26, 2015

/S/  
SUZANNE H. SEGAL  
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**